Whitaker, Judge,
dissenting:
I dissent for the reasons stated in Kelly et al., v. United States, 119 C. Cls. 197; aff’d. 342 U. S. 193.
FINDINGS OF FACT
The court makes findings of fact, based upon the stipulation of the parties, the briefs, and argument of counsel, as follows:
1. At all times material hereto, plaintiff Bergh has been and is now a citizen of the United States of America.
2. During the period from January 1, 1945, to December 1, 1945, Bergh was regularly employed as a leading man, electric welder, in the Norfolk Naval Shipyard, Portsmouth, Virginia and, as a per diem civilian employee of the Navy Department, his rate of pay was fixed by the Secretary of the Navy in accordance with the provisions of the Act of July 16, 1862, 12 Stat. 587, 34 U. S. C. sec. 505.
3. During the period from January 1, 1945, to December 1, 1945, Bergh was required to and did work on each of the following holidays:
*571 January 1, 1945 New Year’s Day
February 22, 1945 "Washington’s Birthday
May 30,1945 Memorial Day
July 4,1945 Fourth of July
On each of these holidays, Bergh worked 9y2 hours and was paid for the work performed on these holidays 8 hours’ straight time and 1% hours’ overtime. On January 1,1945, Bergh worked the night shift and was paid at the basic rate of pay of $1.57 per hour. On February 22, 1945, May 30, 1945, and July 4, 1945, Bergh worked the day shift and was paid at the basic rate of $1.51 per hour.
4.During the period from January 1, 1945, to December 1, 1945, Bergh was excused from working but was nevertheless paid 8 hours’ straight time for the following holidays:
September 3, 1945 Labor Day
November 12, 1945 Armistice Day (November 11, 1945, falling on a Sunday)
November 22, 1945 Thanksgiving Day
For each of these holidays on which Bergh performed no work, Bergh, who was at those times on the day shift, was paid 8 hours’ straight time at the rate of pay of $1.51 per hour.
5. Bergh resigned from his employment in the Norfolk Naval Shipyard on August 13, 1946, at which time he entered the military service of the United States. He was honorably discharged from the military service on February 5,1948, and was re-employed in the Norfolk Naval Shipyard on February 16,1948.
6. On March 10, 1952, Bergh submitted a claim to the Comptroller General of the United States for additional compensation for the work performed on January 1, 1945, February 22, 1945, May 30, 1945, and July 4, 1945. On March 28,1952, the Comptroller General issued a settlement certificate in which he disallowed Bergh’s claim and certified that no balance was due him from the United States. A true copy of such settlement certificate is attached to the petition herein as Exhibit No. 1.
*572 7. Prior to the enactment of the Joint Resolution of June 29,1938 (52 Stat. 1246), the statutes relating to holiday pay for per diem employees generally were as follows:
That the employees of the Navy Yard, Government Printing Office, Bureau of Printing and Engraving, and all other per diem employees of the Government on duty at Washington, or elsewhere in the United States, shall be allowed the following holidays, to wit: The first day of January, the twenty-second day of February, the fourth day of July, the twenty-fifth day of December, and such days as may be designated by the President as days for national thanksgiving, and shall receive the same pay as on other days (23 Stat. 516, Jan. 6, 1885).
That all per diem employees of the Government on duty at Washington or elsewhere in the United States, shall be allowed the day of each year, which is celebrated as “Memorial” or “Declaration Day” and the fourth of July of each year, as holiday, and shall receive the same pay as on other days (24 Stat. 644, Feb. 23, 1887).
That the first Monday of September of each year, being the day celebrated and known as Labor’s Holiday, is hereby made a legal public holiday, to all intents and Surposes, in the same manner as Christmas, the first ay of January, the twenty-second day of February, the thirtieth day of May, and the fourth day of July are now made by law public holidays (28 Stat. 96, June 28,1894).
That the 11th day of November in each year, a day to be dedicated to the cause of world peace and to be hereafter celebrated and known as Armistice Day, is hereby made a legal public holiday to all intents and purposes and in the same manner as the 1st day of January, the 22d day of February, the 30th day of May, the 4th day of July, the first Monday of September, and Christmas Day are now made by law public holidays (52 Stat. 351', May 13,1938).
8. The Joint Resolution of January 6, 1885, was initially construed by the Comptroller of the Treasury so as to deny an extra day’s pay, at straight rates, called “gratuity” pay, to per diem employees who worked on a holiday. In a decision dated March 11,1898 (4 Comp. Treas. 499), the following question from Major Dan C. Kingman, Corps of Engineers, was answered in the negative:
(4) On all large works, it is frequently necessary to keep a certain number of per diem men at work on legal *573 holidays to attend to the pumps, look after the steam machinery, take care of public animals, or for some unforeseen emergency work. In such cases would it be lawful and proper to allow these men an extra day’s pay in order to put them on an equality with their fellows who do not work on the holiday and yet are paid full wages for it ?
However, in a decision dated July 23, 1906, to the Secretary of the Navy, the Assistant Comptroller of the Treasury later construed the above set forth Joint Resolution of January 6, 1885 (23 Stat. 516), to permit the payment of the regular per diem wage for work performed by first-class electrical machinist at the Naval Proving Grounds on a holiday, in addition to gratuity pay required by the Joint Resolution to be paid. In referring to said Joint Resolution of January 6,1885 (23 Stat. 516), and the above set forth Joint Resolution of February 23, 1887 (24 Stat. 644), the opinion said:
These statutes allow or grant to certain employees of the Government the holidays specified with regular pay. The pay given is not for service performed or labor performed, but is a gratuity. It is not intended that the employees shall perform any service for the pay given them by these joint resolutions. The pay has no relation to work. If the public interests require that these employees shall work on the stated holidays and they do work, then if they receive only the pay given by the joint resolutions they have not been paid for their labor, but have received merely the gratuity which they were entitled to without working. They are, therefore, entitled to pay at the rate of their regular per diem pay for work on the holidays in addition to the gratuity pay given them by the statutes referred to; that is, to double the amount of their regular per diem pay when they work all day (13 Comp Treas. 40).
On February 26,1918, H. F. Wortham, Captain, Quartermaster Reserve Corps, requested an opinion of the Comptroller of the Treasury as to whether per diem employees who worked on holidays should be paid gratuity pay plus time and one-half for the hours actually worked, as provided by an authorization of the Quartermaster General made with approval of the Secretary of War. In his reply *574 of March 16, 1918 (24 Comp. Treas. 529) the Comptroller said:
It lias been held by this office that where, by reason of public necessity, per diem employees are required to perform services for the Government on any of the holidays specified in the Acts of Congress dated January 6,1885 (23 Stat. 516) ; February 23, 1887 (24 Stat. 644) ; and June 28, 1894 (28 Stat. 96), they would be entitled, unless otherwise expressly provided, to double pay for such days, i. e., gratuity pay granted by Congress and regular pay for services actually performed on said days. See 8 Comp. Dec. 322; 21 Comp. Dec. 571; 22 Comp. Dec. 405, and 24 Comp. Dec. 218.
On May 5, 1934, the Secretary of the Navy propounded a number of inquiries of the Comptroller General, some of which pertained to gratuity pay, and in his answer of May 19, 1934 (13 Comp. Gen. 370), the Comptroller General stated the opinion that gratuity pay in addition to the regular rate of pay should be given for work performed on any of the holidays mentioned in the Acts of January 6, 1885 (23 Stat. 516), February 23, 1887 (24 Stat. 644), and June 28,1894 (28 Stat. 96).
9. Navy Regulations, 1896, Article 1574 (d) pertaining to pay of per diem workers provided:
For work performed on Sundays or on legal holidays, the ordinary rate of pay, plus 50% additional shall be allowed.
Navy Regulations, 1900, Article 1574 (d) and Navy Regulations, 1905, Article 1600 (o) contain the same provisions quoted above.
Navy Yard Order No. 853, dated August 16, 1910, stated, in part:
* * * per diem employees paid from lump sum appropriation at Navy Yards, Who are regularly required to work on Sundays and holidays, are entitled for work performed on national holidays to their regular rate of pay and in addition thereto gratuity pay.
Laborers and mechanics who by reason of any emergency are required to work on national holidays are entitled to their regular rate of pay plus 50% additional, and in addition thereto to gratuity pay.
*575 Navy Regulations and Naval Instructions, 1918, 382 (5) provided:
For work performed on Sundays or on legal holidays by reason of an emergency, the ordinary rate of pay, with 50% additional, shall be allowed, and in addition thereto gratuity pay for the legal holidays.
Schedule of Wages for 1924, page 20, provided:
For work on legal holidays not exceeding 8 hours performed under proper authority, the schedule rate of pay, plus 50% additional, shall be allowed, and, in addition thereto, gratuity pay for the legal holiday.
For work in excess of 8 hours on Sundays or legal holidays performed by reason of extraordinary emergency, 50% additional to the Sunday or holiday rate of pay shall be allowed.
Schedule of Wages for 1925, page 20; Schedule of Wages for 1926, page 42; Schedule of Wages for 1927, page 43; Schedule of Wages for 1927, as amended, effective July 1, 1927, page 44; Schedule of Wages for 1928, page 41; Schedule of Wages for 1929, page 47; and Schedule of Wages revised to July 23, 1931, page 59, all contain the same provisions as that of the 1924 schedule quoted above.
Schedule of Wages revised to March 1,1936, pages 55-56 provided:
For work on legal holidays within the employee’s regular tour of duty, the schedule rate of pay shall be allowed, and in addition thereto gratuity pay for the legal holiday.
Gratuity pay shall be allowed for legal holidays not within the employee’s regular tour of duty and upon which no work is performed.
* * *
For work on legal holidays, not exceeding 8 hours, when not a part of the employee’s regular tour of duty, performed under proper authority, the schedule rate of pay, plus 50% additional, shall be allowed, and in addition thereto, gratuity pay for the legal holiday.
For work in excess of 8 hours on Sundays or legal holidays, when such days are not a part of the employee’s regular tour of duty, performed by reason of an extraordinary emergency, 50% additional to the Sunday or holiday rate of pay, or 125% additional to the schedule rate of pay, shall be allowed.
*576 10. Public Resolution No. 127 (52 Stat. 1246), enacted on June 29,1938, provided as follows:
That hereafter whenever regular employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piecework basis are relieved or prevented from working solely because of the occurrence of a holiday such as New Year’s Pay, Washington’s Birthday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day, or any other day declared a holiday by Federal statute or Executive order, or any day on which the departments and establishments of the Government are closed by Executive order, they shall receive the same pay for such days as for other days on which an ordinary day’s work is performed.
Sec. 2. The joint resolution of January 6,_ 1885 (U. S. C., title 5, sec. 86), and all other laws inconsistent or in conflict with the provisions of this Act are hereby repealed to the extent of such inconsistency or conflict.
11. The Secretary of the Navy was informed by the Comptroller General, in decision of July 6, 1938, A-94536, 18 Comp. Gen. 10, that gratuity pay for holidays was no longer a vested right of per diem employees but that such employees were then entitled to pay for holidays only under and subject to the conditions of the Joint Resolution. The Comptroller General further held in decision of August 19, 1938, A-97193,18 Comp. Gen. 188, as follows:
Hence regular per diem, per hour and piecework employees are entitled to their regular pay for holidays on which no work is performed only if and when they are “relieved or prevented from working solely because of the occurrence of” the holiday. If they are relieved or prevented from working on the holiday for any reason other than the occurrence of a holiday such as when the holiday occurs on a non-workday or within a period of furlough or leave of absence, no pay for the holiday as such is authorized. If such employees are required to work on a holiday occurring within their regular tour of duty, only one day’s pay is authorized — payment of gratuity holiday pay in addition being no longer authorized. If the holiday occurs on a day outside the regular tour of duty of 40 hours per week and work is required on the holiday, the employee is not entitled to 2 days’ pay, one for working and one for *577 the holiday, but may be entitled to overtime pay for the day under administrative regulations at a rate not less than one and one-half times their regular pay.
12. Navy Department Circular Letter of August 17, 1938, based on the 1938 resolution and the Comptroller General’s opinion A-94536, deleted the provision of the Schedule of Wages revised to March 1, 1936, quoted in finding 9 hereof and substituted therefor:
For work on any day declared a holiday by Federal statute or Executive Order or any day on which the departments and establishments of the Government are closed by Executive Order, within the employee’s regular tour of duty, the schedule rate of pay shall be allowed.
Whenever an employee is relieved or prevented from working solely because of the occurrence of any day declared a holiday by Federal statute or Executive Order, or any day on which the departments and establishments of the Government are closed by Executive Order, he shall receive the same pay for such days as for other days on which an ordinary day’s work is performed.
For work on any day declared a holiday by Federal statute or Executive Order or any day on which the departments and establishments of the Government are closed by Executive Order, not exceeding eight hours, when not a part of the employee’s regular tour of duty, performed under proper authority, the schedule rate of pay plus 50% additional shall be allowed.
For work in excess of eight hours on Sundays or on any day declared a holiday by Federal statute or Executive Order or any day on which the departments and establishments of the Government are closed by Executive Order, when such days are not a part of the employee’s regular tour of duty, performed by reason of extraordinary emergency, 50% additional to the Sunday or holiday rate of pay, or 125 % additional to the schedule rate of pay shall be allowed.
Schedule of Wages, effective November 18,1940, page 63; Schedule of Wages, revised to November 30, 1943, page 29; and Schedule of Wages, revised to October 16, 1944, pages 21-22, restated the provisions of the Circular Letter of August 17, 1938 quoted above, with some minor variations in wording.
*578 Navy Civilian Personnel Instructions, NCPI 250.7-12 and 250.7-13 of April 13, 1945, continued the substantive provisions of the Circular Letter of August 17, 1938.
NCPI 250 Amendment 2 of September 20,1945 substituted for provisions originated in the Circular Letter of August 17,1938 quoted above, the following:
a. Per diem employees shall be allowed compensation at the rate of true time and one-half for work on a Sunday or holiday falling outside the regular tour of duty, provided they have been in a pay status during the regular 40-hour tour of duty.
b. For work on a Sunday or holiday falling within the regular 40-hour tour of duty, per diem employees are allowed the same rate of pay as for any other day within the regular tour of duty.
13. In recognition of the construction of the Comptroller General of the Joint Besolution of June 29,1938, there were introduced into Congress several bills to restore holiday gratuity pay rights similar or in addition to those conferred by prior statutes upon per diem employees. None of such bills was enacted into law. The first such bill was House Joint Besolution 303,76th Cong., 1st Sess., which was introduced by Mr. Darden and referred to the Committee on Civil Service May 24, 1939 (84 Cong. Bee. 6111), and read as follows:
That Public Besolution numbered 127, Seventy-fifth Congress approved June 29,1938 entitled “Joint Besolution providing compensation for certain employees” be amended by striking out all after the resolving clause and substituting in lieu thereof the following:
“That hereafter whenever employees of the Federal Government whose compensation is fixed at a rate per day, per hour, or on a piece-work basis are granted a holiday by Executive Order, or whenever the departments and establishments of the Government are closed by Executive Order in observance of a public event, they shall receive the same pay for such days as on other days on which an ordinary day’s work is performed and all Acts or parts of Acts repealed or modified by the Act of June 29, 1938 (Public Besolution No. 127, 75th Cong.) are hereby restored to full force and effect.”
On May 30, 1939, Bobert Bamspeck, Chairman, Committee on Civil Service, House of Bepresentatives, requested *579 a report of the Civil Service Commission regarding the proposed legislation. On October 31,1939, the president of the Civil Service Commission, Harry B. Mitchell, replied, stating that:
It will be seen, therefore, that the Joint Resolution of June 29, 1938, thus interpreted [by the Comptroller General] instead of conferring the additional benefits of pay for days declared holidays by Executive Order, may operate to deprive a per diem employee of the gratuity pay for statutory holidays, a benefit which for more than fifty years has been regarded as in the nature of a vested right. This interpretation of the statute grants no additional pay to a per diem employee who is required to work on a statutory holiday occurring within his regular tour of duty, while a per diem employee with exactly the same tour of duty who is not required to work receives exactly the same pay for the holiday. Further, the receipt of pay for statutory holidays upon which per diem employees are not required to work is dependent upon circumstances which may be purely fortuitous, such as the occurrence of a holiday upon an administrative non-work day, or within a period of furlough or leave without pay. In other words, if two per diem employees performing exactly the same work are assigned to different tours of duty, one including a statutory holiday, and the other excluding it, the employee assigned to the former tour will receive pay for the holiday, whereas the employee assigned to the latter tour will not, although neither employee is required to work on that day. Since H. J. Res. 303 will adjust any inequalities as between per diem employees themselves, the Commission believes that favorable consideration should be given to the bill.
The Bureau of the Budget has advised this office that the enactment of H. J. Res. 303 in its present form would not be in accord with the program of the President. The Bureau states, however, that there would be no objection to the enactment of legislation which would permit the payment of compensation to a regular per diem employee when absent from duty for any cause on a holiday occurring within the tour of duty.
In the 77th Cong., 1st Sess., there was introduced H. R. 1386, a bill to grant all employees of the United States Government equal rights and privileges with respect to all established national holidays. H. R. 1386, introduced by Mr. Darden and referred to the Committee on Public Build *580 ings and Grounds on January 6, 1941 (87 Cong. Bee. 47), reads as follows:
That all employees of the United States Government whose tour of duty requires them to work on any national holiday for any reason whatsoever be not deprived of the benefits of any such holiday as to gratuity pay as may be established by Congress.
Sec. 2. Where and whenever a holiday falls during any employees’ tour of duty, such as employees of Government power plants, Fire Department employees, telephone operators, guards and other maintenance workers who may be required to work on holidays, that such employees be either granted extra compensation over and above the grautity pay allowed by congresssional action for all national holidays or that the employees be granted time out for such work on any holiday, and during the week in which a holiday falls.
Sec. 8. Compensation for holiday work shall be at one and one-half times the regular rate of pay and shall be in addition to the gratuity pay allowed for holiday. Where time out is granted for holiday work in lieu of compensation, such time shall likewise be granted on the same basis as the overtime rate of pay.
Sec. 4. After the passage of this Act, it shall be unlawful to work any employee of the United States Government in excess of thirty-two hours a week in which a national holiday falls, and for which said employee shall receive pay for forty hours’ work; except that the stipulations of section 3 of this Act shall be complied with.
On January 14, 1941, Eobert Bamspeck, Chairman, Committee on Civil Service, transmitted a copy of H. B. 1386 to the Civil Service Commission and requested a report of the Commission’s views regarding the proposed legislation. On July 21,1941, the Acting President, Lucille Foster McMillin, Civil Service Commission, replied, recommending certain changes and favorable consideration of the bill and stating further that the Bureau of the Budget had advised that the enactment of H. B. 1386, either in its present form, or in the amended form suggested by the Civil Service Commission, would not be in accord with the program of the President, but that there would be no objection to the enactment of legislation which would permit the payment of compensation to a regular per diem employee when absent from duty for any cause on a holiday occurring within his tour of duty.
*581 There was introduced in the 77th Congress, 1st Session, S. 1930 (introduced September 24, 1941 by Senator Byrd and referred to the Senate Committee on Naval Affairs, 87 Cong. Rec. 7526) and H. R. 6222 (introduced December 15, 1941, by Mr. O’Toole and referred to the House Committee on Civil Service, 87 Cong. Rec. 9750). S. 1930 and H. R. 6222 both read as follows:
That the first section of the joint resolution entitled “Joint Resolution providing compensation for certain employees,” approved June 29, 1938, is amended by inserting before the period at the end thereof a colon and the following:
“Provided, That whenever any employee of the Federal Government who is employed at any Navy yard or naval station is required to work on any such holiday or day on which the departments and establishments of the Government are closed by Executive order, he shall be allowed compensatory time off on one other workday within the week following such holiday or, in lieu thereof, be paid one additional day’s pay at his regular rate.”
In the 79th Congress, 2d Sess., S. 1679, “A bill to authorize additional compensation for work performed on a legal holiday by employees of the Government Printing Office,” was passed by the Senate on March 5,1946 (92 Cong. Rec. 1919) and provided as follows:
That employees of the Government Printing Office who are required to work on days designated by Federal statute or Executive order as holidays are entitled, for the time worked, to their regular rate of compensation in addition to the regular pay for the holiday.
S. 1679 was not passed by the House.
14. In the 77th Congress, 1st Session, there was introduced H. R. 1642, a proposed amendment to Public Resolution No. 127, to include per diem employees of the District of Columbia Government and to leave the substantive provisions of the Resolution unchanged. H. R. 1642 passed the House on June 2, 1941 (87 Cong. Rec. 4624) after the construction placed upon Public Resolution No. 127 by the Comptroller General had become well known and after other bills such as H. J. Res. 303, 76th Congress had been introduced to change the substantive effect of the Public Resolu *582 tion as construed by the Comptroller General. H. R. 1642 was not passed by the Senate.
15. The Secretary of the Navy issued the following directives providing for wartime holiday work by Navy employees and disciplinary action against employees failing to report for work on holidays:
October 29 1942 ALNAVSTA 291330
BECAUSE OP THE NECESSITY FOE EXPEDITING WOEK DUE TO WAE EMEEGENCY 11 NO-VEMBEE AEMISTICE DAY X WILL BE A WOEK DAY FOE ALL EMPLOYEES OF THE NAVY DE-PAETMENT X MAEINE COEPS AND COAST GUAED AND THEIE FIELD SEEVICES PAEA-GEAPH EMPLOYEES WILL EECEIVE THEIE EEGULAE COMPENSATION FOE WOKK PER-FOEMED ON AEMISTICE DAY X EXCEPT THAT EXISTING OVEETIME PKOVISIONS APPLY X PEE ANNUM EMPLOYEES WHO AEE DIEECTED TO EEPOET FOE WOKK ON THE HOLIDAY AND DO NOT EEPOET FOE WOKK ON THAT DAY SHALL NOT BE PAID FOE THE HOLIDAY X PEE DIEM EMPLOYEES WHO AEE DIEECTED TO WOKK ON THE HOLIDAY AND DO NOT EEPOET FOE WOEK ON THAT DAY SHALL BE MAEKED OUT AND APPRO-PEIATE DISCIPLINARY COGNIZANCE TAKEN OF FAILURE TO EEPOET FOE DUTY PARAGRAPH IN ACCORDANCE DECISION COMP. GEN. 2 APRIL NO CHARGE SHALL BE MADE AGAINST THE ANNUAL OE SICK LEAVE ACCOUNTS OF PEE ANNUM AND PER DIEM EMPLOYEES FOE ABSENCE ON THE HOLIDAY WHETHER WITH OE WITHOUT AUTHORITY.
August 17 1943 ALNAVSTA 172309
IN ACCORDANCE WITH A DIRECTIVE OF THE PRESIDENT 12 MAY THAT NECESSITY FOR MAINTAINING MAXIMUM OUTPUT IN GOVERNMENT ACTIVITIES THROUGHOUT THE WAE PERIOD REQUIRES THAT DAYS NORMALLY OBSERVED BY THE DEPARTMENTS AND AGENCIES AS HOLIDAYS SHOULD X WITH EXCEPTION OF CHRISTMAS BE CONSIDERED AS REGULAR WORK DAYS FOR DURATION OF WAR X LABOR’S HOLIDAY 6 SEPTEMBER AND ALL SUCCEEDING HOLIDAYS X WITH EXCEPTION OF *583 CHRISTMAS WILL BE WORK DAYS FOR ALL EMPLOYEES OF THE NAVY DEPARTMENT X HEADQUARTERS US MARINE CORPS AND HEADQUARTERS US COAST GUARD AND THEIR FIELD SERVICES X INSTRUCTIONS REGARDING ARMISTICE DAY IN ALNAVSTA 291330 OCTOBER 1942 APPLY.
16. On May 12, 1943, tbe following White House Memorandum was issued:
To the Heads of Executive Departments and Agencies Subject: Observance of holidays during the war period
The necessity for maintaining maximum output in Government activities throughout the war period requires that days normally observed by the departments and agencies as holidays should, with the exception of Christmas, be considered as regular work days for the duration of the war.
By direction of the President:
(S) Wm. H. McReyNOLds,

Administrative Assistant to the President.

This Presidential directive was reaffirmed on December 17, 1943, by Mr. W. H. McReynolds, Administrative Assistant to the President, in the following statement addressed to the heads of the Federal Departments and Agencies:
On May 13, 1943, by direction of the President, I issued the following statement concerning the observation of holidays:
“The necessity for maintaining maximum output in Government activities throughout the war period requires that days normally observed by the departments and agencies as holidays should, with exception of Christmas, be considered as regular work days for the duration of the war.”
This policy is consistent with the attitude of the Government toward maintenance of full production in war industry on Holidays other than Christmas.
The President has reaffirmed his desire previously expressed on this matter.
There is full realizaion of the long hours which Federal employees are continuously working in the interest of the war effort and of the fact that holiday work is performed by Federal employees without additional compensation. The policy with respect to work on holidays will be reconsidered at the earliest possible moment that progress in the war will permit.
*584 Christmas Day and Christmas Eve have traditionally been important family days in the life of this Nation. The President has indicated that the heads of departments and agencies may, in their discretion, permit offices or establishments to be closed or any employees whose services can be spared to leave their work not earlier than two hours in advance of the usual closing time on Christmas Eve, December 24.
With respect to forthcoming holidays, other than Christmas, you are advised that the President expects them to be observed as regular working days.
Accordingly, per annum and per diem employees of the United States were required to work on all succeeding holidays except Christmas until August 23,1945, when the eight paid holidays were restored by White House Memorandum.
17. The Federal Employees Pay Act of 1945 (59 Stat. 295), effective July 1, 1945, authorized holiday premium pay at the rate of time and one-half “in lieu of their regular pay” when graded employees were required to work on a holiday. This law thus created an inequity between the two groups of employees' — graded and ungraded. With a view to correcting this inequity, the Secretary of the Navy and the Secretary of War in a joint letter to the Comptroller General asked whether the heads of the two departments by administrative order could authorize holiday premium pay for ungraded employees required to work on holidays. The Comptroller General ruled in the affirmative on February 7, 1946 (25 Comp. Gen. 584). By official order dated February 19, 1946 (Alnavsta No. 11), the Secretary of the Navy directed that all ungraded employees required to work on a holiday falling within the regular workweek be paid for such work at the rate of time and one-half in lieu of their regular rate. Bergh was an ungraded employee within the meaning of the Federal Employees Pay Act of 1945.
18. On September 9, 1942, the President, in Executive Order No. 9240, 7 F. E. 7159, limited the holiday pay of persons employed in war woi'k, effective October 1, 1942, as follows:
Whereas many labor organizations’ have already adopted the patriotic policy of waiving double time wage compensation or other premium pay for work on Saturday, Sunday and holidays, as such, for the duration of the war; and
*585 Whereas it is desirable and necessary in the prosecution of the war, and to insure uniformity and fair treatment for those labor organizations, employers and employees who are conforming to such wage policies that this principle be universally adopted.
Now, therefore, by virtue of the authority vested in me by the Constitution and the statutes, as President of the United States and as Commander in Chief of the Army and Navy, it is hereby ordered:
I. That the following principles and regulations shall apply for the duration of the war to the payment of premium and overtime wage compensation on all work relating to the prosecution of the war:
A. lío premium wage or extra compensation shall be paid to any employee in the United States, its territories or possessions, for work on Saturday or Sunday except where such work is performed by the employee on the sixth or seventh day worked in his regularly scheduled workweek and as hereinafter provided.
(1) Where because of emergency conditions an employee is required to work for seven consecutive days in any regularly scheduled workweek a premium wage of double time compensation shall be paid for work on the seventh day.
(2) Where required by the provisions of law or employment contracts, not more than time and one-half wage compensation shall be paid for work in excess of eight hours in any day or forty hours in any workweek or for work performed on the sixth day worked in any regularly scheduled workweek.
B. No premium wage or extra compensation shall be paid for work on customary holidays except that time and one-half wage compensation shall be paid for work performed on any of the following holidays only:
New Year’s Day Thanksgiving Day
Fourth of July Christmas Day
Labor Day
and either Memorial Day or one other such holiday of greater local importance.
II. All Federal departments and agencies shall conform the provisions in all existing and future contracts neg-otiated, executed, or supervised by them to the policies of this order. All such departments and agencies shall immediately open negotiations to alter provisions in existing contracts to conform them to the requirements of this order.
III. Nothing in this order shall he construed as requiring a modification of the principle that every employee
*586 should have at least one day of rest in every seven days. The continuous operation of plants and machines in prosecuting the war does not require that employees should work seven consecutive days.
IV. Nothing herein shall be construed as superseding or in conflict with the provisions of the statutes prescribing the compensation, hours of work and other conditions of employment of employees of the United States.
Y. All Federal departments and agencies affected by this order shall refer to the Secretary of Labor for determination questions of interpretation and application arising hereunder.
* * * $ *
Interpretative Bulletin No. 1 of Executive Order 9240, U. S. Department of Labor, Office of the Secretary, dated February 17,1943, contained the following provisions:
The Secretary of Labor, pursuant to Section V, is authorized and directed to interpret the provisions of Executive Order 9240. This bulletin is intended to set forth the Secretary’s interpretations. The Order was designed (1) to facilitate ’round-the-clock war production, (2) to discourage absenteeism found to have resulted from the practice of paying premium rates for particular days as such, and (3) to assure, in the interest of efficiency and health, observance of the principle that workers should have at least one day of rest in each week. The interpretations embodied in this bulletin have been made after a number of months of experience under the Order and are believed to be in accord with its purpose.
sfc # # #
II. COVERAGE
* # * * *
* * * Agricultural workers and employees of Federal or /State Government, and political subdivisions thereof, are not subject to the Order.
s}: 5{j & %
VIII. HOLIDAYS
15. Paragraph IB of the Order has two requirements: (1) It requires time and one-half for work on the 6 holidays enumerated in the Order, and (2) it forbids payment of any premium wage or extra compensation for work on any other holidays as such. A choice is *587 afforded between Memorial Day and any other holiday of greater local importance. Failure to select a substitute holiday leaves Memorial Day as the sixth holiday under the Order. The holiday chosen as a substitute for Memorial Day need not be the same holiday each year but only 6 holidays may be paid for at premium rates in the 12-month period beginning October first.
16. The Order requires that time and one-half compensation be paid for work on designated holidays but torbids payment in excess of time and one-half. Thus, if the wages of an employee include compensation for a holiday although not worked, the additional amount which must be paid under the Order for work performed on that holiday is limited to such amount as brings the total compensation for the day to time and one-half.
17. Compensation for work performed on a holiday should be computed at one and one-half times the straight-time rate paid for work on that day or one and one-half times the average straight-time hourly rate for the workweek, whichever is the customary method of computing overtime compensation. The employer’s records should indicate which method is adopted.
18. For purposes of computing the seventh day of work in a workweek under the Order, the designated holidays must be included in the count whether or not work is performed on such days. An idle holiday should be included in computing the sixth day worked in the workweek unless the employment contract specifies otherwise.
19. Insofar as the Order requires payment of time and one-half for work on the designated holidays, it means payment of time and one-half for the hours worked on the calendar holiday, namely, hours worked between midnight at the beginning of the holiday and midnight at the close of the holiday.
20. However, in order to give all employees equal benefit of the holiday, it is permissible to compensate employees at time and one-half for all hours worked on a shift, some part of which cuts across the calendar holiday. It is not permissible to pay the time and one-half holidayrate for more than one shift in a situation in which the employee works two shifts, both of which cut across the calendar holiday. However, employees must be paid time and one-half for at least all the hours worked on the calendar holiday.
21. If one of the designated holidays falls on Sunday, either Sunday or Monday may be observed as the holiday, but not both.
*588 22. There is no provision in the Order relating to compensation on holidays not worked.
tjí íjí >¡4 íjí
Because its Zone Pay Standards were substantially identical to the provisions of Executive Order 9240 the shipbuilding and ship-repair industry was exempted from the terms of Executive Order 9240 (by order of Secretary of Labor, dated February 25,1943). By these Zone Standards, employees of the shipbuilding and ship-repair industry were paid time and one-half for work performed on specified holidays during the period from July 19 1952, to October 6,1945.
19. The wage and working conditions of Bergh and a first-class electric welder employed by the largest privately owned shipyard in the Norfolk, Ya., area, the Newport News Shipbuilding and Dry Dock Company, Newport News, Virginia, on January 1,1945, were as follows:
Bergh (Navy) : Newport News Shipbuilding & Welder Dry Dock Co.:
1. Kate of pay:
(a) Night shift, $1.57 per hour. Unknown.
(b) Day shift, $1.51 per hour.
(c) Holiday pay, same as above. lVz regular rate on 6 specified holidays per year if worked.
2. Vacation: 26 days per year. One week per year for employees with 2 years continuous service.
Two weeks per year for employees with 10 years continuous service.
3. Sick leave: 15 days per year. None.
4. Paid holidays: 8 days per year. None.
5. Retirement: Civil Service. Social Security.
6. Bonus plan: None. None.
7. Plospitalization (in addition to on-the-job injury) : None. Employee-company participation.
8. Insurance (in addition to on-the-job injury) : None. Employee-company participation. •
*589 The holidays worked and pay received therefor by production employees of the Newport News Shipbuilding and Dry Dock Company during 1945 were as follows:
January 1, 1945. Holiday worked. Pay and % received.
February 22, 1945. Holiday worked. Straight pay received
(George Washington’s Birthday not a holiday specified in collective bargaining agreement or Zone Standards)
Hay 30, 1945. Holiday worked. Pay and % received.
July 4,1945. Holiday worked. Pay and % received.
September 3, 1945. Holiday not worked. No pay received.
November 12, 1945. Holiday worked. Straight pay received.
(Armistice Day not a holiday specified in collective bargaining agreement)
November 22, 1945. Holiday not' worked. No pay received.
December 25,1945. Holiday not worked. No pay received.
20. No other action has been taken on this claim in Congress or by any of the Departments; no person other than Bergh is the owner thereof or interested therein; no assignment or transfer of this claim or any part thereof, or interest therein has been made.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiffs are entitled to recover.
Entry of judgment is suspended pending the filing of a report by the General Accounting Office showing the amount due each plaintiff in accordance with this decision.
In accordance with the opinion of the court, and upon a report by the General Accounting Office showing the amounts due each plaintiff, judgment was entered for the following named plaintiffs and in the following amounts:
Alfred C. Bergh_$48.80
Joe Frank Bryson_ 30.24
James A. Gates_ 51.20
Glenn Vockrodt_ 21. 28
It is further ordered that the petition as to plaintiff Harry J. Novotney, Jr., is dismissed.